# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| **DEBORAH BORGES,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| | : | **CIVIL ACTION FILE NO.** |
| **v.** | : | **1:11-CV-3363-JEC-AJB** |
| | : | |
| **BANK OF AMERICA, NA;** | : | |
| **MORTGAGE ELECTRONIC** | : | |
| **REGISTRATION SYSTEMS, INC.;** | : | |
| **BAC HOME LOANS SERVICING, LP;** | : | |
| **CWABS, INC.; THE BANK OF NEW** | : | |
| **YORK MELLON, INC.; and** | : | |
| **BARRETT DAFFIN FRAPPIER** | : | |
| **LEVINE & BLOCK LLP,** *attorneys for* | : | |
| *Bank of America, NA,* | : | |
| | : | |
| **Defendants.** | : | |

## UNITED STATES MAGISTRATE JUDGE'S ORDER
## AND FINAL REPORT AND RECOMMENDATION

Before the Court are Plaintiff's motion to remand the action to state court,

[Doc. 11], and two motions to dismiss filed by various Defendants, [Docs. 2, 14]. For

the reasons below, the undersigned **RECOMMENDS** that the motion to remand be

**DENIED**, [Doc. 11], that the first motion to dismiss be **GRANTED**, [Doc. 2], that the

second motion to dismiss be **GRANTED IN PART**, **GRANTED AS UNOPPOSED**

**IN PART**, and **DENIED AS MOOT IN PART**, [Doc. 14], that certain claims be **DISMISSED AS ABANDONED**, and that the complaint be **DISMISSED**.

## I.    Introduction

The relevant procedural history is as follows.

On September 2, 2011, Plaintiff Deborah Borges, represented by counsel, filed a complaint against Defendants in the Superior Court of Fulton County, Georgia, alleging the following counts: (1) injunctive relief; (2) "contractual breach of good faith and fair dealing"; (3) predatory lending; (4) "violation of Georgia Fair Housing Law" (the Georgia Fair Housing Act ("GFHA"), O.C.G.A. § 8-3-200 *et seq.*); (5) quiet title; (6) "failure to comply with state statutes"; (7) "conversion or illegal attempt to convert"; and (8) violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*  [Doc. 1-1].  On October 3, 2011, Defendants Bank of America, N.A., "in its own original capacity and as successor by merger to [Defendant] BAC Home Loans Servicing, LP" (together, "BANA") and CWABS, Inc. ("CWABS") removed the action to this Court.  [Doc. 1].

AO 72A
(Rev.8/8
2)

On October 11, 2011, Defendant Barrett Daffin Frappier Levine & Block LLP ("Barrett Daffin") filed an answer, [Doc. 3], and a motion to dismiss, [Doc. 2]. Plaintiff did not respond to Barrett Daffin's motion to dismiss. [*See* Dkt.].[1]

On November 3, 2011, Plaintiff filed a motion to remand the action to state court. [Doc. 11]. On November 10, 2011, Defendants BANA, "Mortgage Electronic Registration System, Inc." ("MERS"), CWABS, and "The Bank of New York Mellon, Inc." ("BONYM") (collectively, "Bank Defendants") filed a motion to dismiss. [Doc. 14]. On November 21, 2011, the Bank Defendants and Barrett Daffin filed a response to the motion to remand. [Doc. 18]. Plaintiff did not file a reply regarding the motion to remand. [*See* Dkt.]. On November 25, 2011, Plaintiff filed a response to the Bank Defendants' motion to dismiss. [Doc. 20]. On December 9, 2011, the Bank Defendants filed a reply in support of their motion to dismiss. [Doc. 22].

---

[1]     Plaintiff's failure to respond to Barrett Daffin's motion to dismiss indicates that there is no opposition to the motion. N.D. Ga. R. 7.1B. Because the motion is unopposed, the undersigned **RECOMMENDS** that the District Judge **GRANT** Barrett Daffin's motion to dismiss, [Doc. 2], and **DISMISS** Plaintiff's claims against Barrett Daffin. *Magluta v. Samples*, 162 F.3d 662, 664-65 (11th Cir. 1998) (observing that district court may dismiss case when a party, represented by counsel, fails to respond to motion to dismiss); *see also Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991) (noting that if represented party fails to respond to motion to dismiss, court may treat motion as unopposed and subject to dismissal without conducting merits analysis).

3

AO 72A
(Rev.8/8
2)

## II.    Facts

As set forth in her complaint, Plaintiff's factual allegations are as follows.

On October 31, 2003, Plaintiff "received a Warranty Deed for the purchase of real property at 3156 Esplanade Circle, Atlanta, Georgia, 30311," having financed the property with a first and second mortgage. [Doc. 1-1 ¶ 8]. She refinanced the loans on or about February 28, 2006, with a negatively amortizing mortgage loan in the amount of $280,000 with Citizens Fidelity Mortgage Corp. [*Id.* ¶¶ 9, 11]. Plaintiff contends that Defendants did not adequately advise her of the true risks of a negatively amortizing loan. [*Id.* ¶ 17].[2]

At an unspecified time or times, Plaintiff requested from "the purported lenders, and servicers" certain information—the identity of the holder of the promissory note and of the "present owner of his loans," and "[a] correct and final payoff on the 1st and 2nd mortgage loans"—but was not provided the information. [*Id.* ¶ 12]. At an unspecified time, Plaintiff received a notice of acceleration from BANA based on an

_____

[2]    The undersigned notes that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. v. Twombly*, 550 U.S. 555, 555 (2007)).

AO 72A
(Rev.8/8
2)

alleged default. [*Id.* ¶ 14]. Plaintiff's home was scheduled for foreclosure on September 6, 2011. [*Id.* ¶ 21].

On or about July 8, 2011, a person named Aida Duenas purported to assign the security deed on behalf of MERS to BONYM, a trust that was created in 2006. [*Id.* ¶ 23-24]. Further, Plaintiff contends that because "Defendants" do not presently hold both the security deed and the promissory note, they are not secured creditors and are thus unable to utilize the non-judicial foreclosure process in Georgia. [*Id.* ¶ 27]. In addition, BANA is the subject of a "Consent Order" filed by the "Office of the Comptroller of Currency" stating that BANA "shall provide loan audit by third parties" to determine if foreclosure proceedings conducted during 2009 and 2010 were proper. [*Id.* ¶ 33]. Finally, Plaintiff contends that BANA has failed to properly document the present foreclosure with an original note and security deed for Plaintiff to examine and verify her debt. [*Id.* ¶ 34].

For relief, Plaintiff requests relief "as provided under the Consent Order"; an award of "the value of the security interest in Plaintiffs' [sic] property created under the transaction"; return of all money or property given by Plaintiff in connection with "this High Cost transaction," plus interest; statutory damages under the FDCPA; actual

AO 72A
(Rev.8/8
2)

damages; attorney's fees and costs; punitive damages; and other relief deemed just by the Court.  [*Id.* ¶ 107].

## III.  Motion to Remand

### A.  Arguments of the Parties

In her motion to remand, Plaintiff first contends that O.C.G.A § 44-2-60 grants the Superior Court of Fulton County exclusive original jurisdiction over this action because it is a "real property title dispute."  [Doc. 11-1 at 3].

Second, Plaintiff contends that this Court lacks subject-matter jurisdiction.  She suggests there is no federal-question jurisdiction because there is no "substantial" federal question, this is an unlawful-foreclosure action, and Plaintiff can be granted all the "necessary" relief sought without the FDCPA claim in the complaint.  [*Id.* at 5-9].  She further states that removal was improper because not all parties were served prior to removal.  [*Id.* at 9-12].[3]

---

[3]    Plaintiff adds that she

Objects On and For the Record that the removing defendants' legal counsel is defending the defendants who have yet to respond to the complaint.  The attorney representing BOA, BAC, and CWABS, lists only those three defendants as being represented by him; as such, ¶¶ 21, 22, and 23, should be stricken, or in the very least, disregarded by the Court.

AO 72A
(Rev.8/8
2)

Third, Plaintiff contends that a case is precluded from removal if all parties did not join in the removal. [*Id.* at 12-13].

Fourth, Plaintiff includes a section entitled "Congress' Declaration That the Continued Regulation and Taxation by the Several States is in the Public Interest." [*Id.* at 13]. In this section, Plaintiff discusses the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*, and the McCarran-Ferguson Act, 15 U.S.C. § 1011 *et seq.*, and contends that this Court "has neither original, exclusive, nor inadvertent jurisdiction in this matter." [Doc. 11-1 at 13-15].

Fifth, Plaintiff contends that the case should be remanded pursuant to 28 U.S.C. § 1447(c) because the removal was defective. [Doc. 11-1 at 15-16].

In response, Defendants first state that notice of removal was properly and timely filed. [Doc. 18 at 4]. They observe that BANA and CWABS were served on September 2, 2011, and the notice of removal was filed on October 3, 2011, within thirty days of service as required by 28 U.S.C. § 1446(b) and Rule 6(a)(1)(C) of the Federal Rules of Civil Procedure. [*Id.* at 5]. They further contend that removal was proper because consent to removal is not required from defendants who have not been properly served, and here, BONYM had not been properly served, and no confirmation

_____

[Doc. 11-1 at 12].

AO 72A
(Rev.8/8
2)

of service had been received from MERS or Barrett Daffin. [*Id.* at 5-8]. They distinguish the *Holmstrom* case cited by Plaintiff. [*Id.* at 6-7].

Second, Defendants contend that this Court has federal-question jurisdiction over the action because the complaint on its face pleads federal causes of action—violations of regulations prohibiting predatory lending promulgated by the Office of the Comptroller of the Currency (a division of the U.S. Department of Treasury) and the FDCPA claim—and thus the Court has original jurisdiction over those claim and supplemental jurisdiction over the state-law claims. [*Id.* at 8-11]. Defendants further state that Plaintiff's contentions regarding RESPA and the McCarran-Ferguson Act are "nonsensical ramblings," and that while Plaintiff is presumably attempting to argue that the issues on which Plaintiff's claims are premised are exempt from federal regulation and thus the Court has no jurisdiction, Plaintiff has not explained how a limit on federal regulations would destroy federal-question jurisdiction. [*Id.* at 11-12]. In addition, Defendants contend that Plaintiff's reliance on O.C.G.A. § 44-2-60 is misplaced because Plaintiff's claims "sound in alleged statutory violations, contract and tort," and do not concern only title to real property. [*Id.* at 12-13].

Third, Defendants contend that diversity jurisdiction exists because of diversity of citizenship between Plaintiff and all non-fraudulently joined defendants. [*Id.* at 13].

8

Defendants state that while Barrett Daffin has an office in Georgia, its citizenship may be disregarded under the doctrine of fraudulent joinder because there are insufficient allegations in the complaint to state a claim for relief against Barrett Daffin. [*Id.* at 13-15]. Defendants note that there is a not a single allegation in the complaint directed at Barrett Daffin. [*Id.* at 15-16]. In addition, they note that Barrett Daffin cannot be liable because it is entitled to immunity for actions undertaken as counsel pursuing the rights of its client. [*Id.* at 16]. Regarding the amount in controversy, Defendants contend that this is satisfied because of Plaintiff's claims for injunctive relief (the 2011 market value of the property was $206,300) and punitive damages. [*Id.* at 17-20].

Finally, Defendants state that Plaintiff's assertion that the case be remanded for "defective removal" is untimely because a motion to remand on the basis of any defect other than subject-matter jurisdiction must be made within thirty days of the filing of the notice of removal; here, the notice of removal was filed on October 3, 2011, and the motion to remand was not filed until November 3, 2011. [*Id.* at 20-21].

## B. Removal Standard

Under the federal removal statute, a defendant may in "any civil action brought in a State court of which the district courts of the United States have original

9

jurisdiction . . . remove[ the civil action]" to federal court. 28 U.S.C. § 1441(a). District courts have original jurisdiction over a case if: (1) the case involves diversity of citizenship (and the defendant is not a citizen of the state in which the action is brought); or (2) a claim arises under the Constitution, or treaties, or laws of the United States (without regard to the citizenship or residence of the parties). 28 U.S.C. § 1441(b). A district court may also exercise supplemental jurisdiction over state-law claims that are so related to federal claims in the removed action "that they form part of the same case or controversy." *See Wood v. City of Lanett*, 564 F. Supp. 2d 1317, 1318, 1322 (M.D. Ala. 2008) (quoting 28 U.S.C. § 1367(a) and citing *Behlen v. Merrill Lynch*, 311 F.3d 1087, 1095 (11th Cir. 2002)); *see also City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165 (1997) (stating that § 1367(a) "applies with equal force to cases removed to federal court as to cases initially filed there; a removed case is necessarily one 'of which the district courts . . . have original jurisdiction' " (quoting 28 U.S.C. § 1441(a))); 14C Wright, Miller & Cooper, *Fed. Pract. & Proc.* § 3724 ("It has been well established for years that federal courts can exercise both original and removal jurisdiction over a jurisdictionally insufficient nonfederal claim that is so closely related to a federal question as to fall within . . . the supplemental . . . jurisdiction of the federal courts."). The removing defendant has the

10

burden of proving proper federal jurisdiction. *Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1294 (11th Cir. 2008).

Although the federal removal statute permits a defendant in a state civil action to remove the case to federal court under certain circumstances, federal law also allows the plaintiff to seek remand of the case to state court under 28 U.S.C. § 1447. Specifically, the remand statute provides that:

> [a] motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a).

28 U.S.C. § 1447(c). Thus, "a district court may remand cases when the court lacks subject matter jurisdiction." *Poore v. Am.-Amicable Life Ins. Co. of Tex.*, 218 F.3d 1287, 1289 (11th Cir. 2000). A district court determines whether it has subject-matter jurisdiction at the time of removal. *Id.* at 1290-91. If a court does not have supplemental jurisdiction over a claim, a court lacks subject-matter jurisdiction over the claim[4] and the claim should be remanded, *see* 28 U.S.C. § 1447(c). Also, the Supreme Court has indicated that a district court should evaluate whether it will take

---

[4]    *See* 13D Wright & Miller, *Fed. Pract. & Proc.* § 3567.1 ("It is important to remember that supplemental jurisdiction is a form of subject matter jurisdiction . . . ."); *see also Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (indicating that when a court has supplemental jurisdiction over a claim, it has subject-matter jurisdiction over the claim).

AO 72A
(Rev.8/8
2)

supplemental jurisdiction over state-law claims in a removal case pursuant to the factors outlined in 28 U.S.C. § 1367(c). *See Int'l Coll. of Surgeons*, 522 U.S. at 173.

## C. Discussion

First, the undersigned concludes that this Court does not have diversity jurisdiction. Under 28 U.S.C. § 1332, district courts "have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000" and is between citizens of different states. 28 U.S.C. § 1332(a). A party must plead citizenship distinctly and affirmatively. *Toms v. Country Quality Meats, Inc.*, 610 F.2d 313, 316 (5th Cir .1980); *Am. Motorists Ins. Co. v. Am. Emp. Ins. Co.*, 600 F.2d 15, 16 (5th Cir. 1979)[5]; *see also Duff v. Beaty*, 804 F. Supp. 332, 334 (N.D. Ga. 1992) (Murphy, J.). "Citizenship, not residence, is the key fact that must be alleged in the complaint to establish diversity for a natural person," like Plaintiff in this case. *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994). A corporation is "deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1). An individual is

---

[5]     In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to October 1, 1981.

12

a citizen of a state when she is: (1) a United States citizen;[6] and (2) domiciled in the state.[7]  *See Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989); *McCormick v. Aderholti*, 293 F.3d 1254, 1257 (11th Cir. 2002). "Thus, mere residency is not enough to establish citizenship for diversity jurisdiction." *Gordon v. Autumn Village 2, LLC*, No. 5:08-cv-348, 2008 WL 4682249, at *1 (M.D. Ga. Oct. 21, 2008). "A complaint merely alleging residency, as opposed to state citizenship or domicile, may be insufficient to invoke diversity jurisdiction . . . because domicile is not always the same as residence, as a person may reside in one place but be domiciled elsewhere." *Tucker v. Thomasville Toyota*, No. 7:08-cv-90, 2008 WL 2789029, at *2 (M.D. Ga. July 16, 2008) (citing *Delome v. Union Barge Line Co.*, 444 F.2d 225, 233 (5th Cir. 1971); *Held v. Held*, 137 F.3d 998, 1000 (7th Cir. 1998); *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989)).  Here, Plaintiff's complaint states merely that she has "at all relevant times *resided*" at the Property,

---

[6]     A person is a citizen if she is born or naturalized in the United States. *See Tucker v. Thomasville Toyota*, No. 7:08-cv-90, 2008 WL 2789029, at *2 (M.D. Ga. July 16, 2008) (citing U.S. Const. amend. XIV, § 1).

[7]     " 'A person's domicile is the place of his true fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom.' "  *McCormick v. Aderholti*, 293 F.3d 1254, 1257-58 (11th Cir. 2002) (quoting *Mas v. Perry*, 489 F.2d 1396, 1399 (5th Cir. 1974)).

AO 72A
(Rev.8/8
2)

[Doc. 1-1 ¶ 1 (emphasis added)], and the complaint therefore does not allege her citizenship. *See Gonzalez v. First NLC Fin Servs.*, No. CV 09-4147 AHM (RZx), 2009 WL 2513670, at *2 (C.D. Cal. Aug. 12, 2009) (diversity jurisdiction not apparent from the face of the complaint where complaint alleged that plaintiff was "an individual residing in Los Angeles County, and at all times relevant, living at [the subject property], as his primary residence") (alteration in original). Thus the Court cannot conclude that it has diversity jurisdiction. Absent such allegation, there can be no diversity jurisdiction. The undersigned therefore turns to federal-question jurisdiction.

As the Eleventh Circuit has noted:

> Absent diversity of citizenship, a plaintiff must present a "substantial" federal question in order to invoke the district court's jurisdiction. *Hagans v. Lavine*, 415 U.S. 528, 537, 94 S.Ct. 1372, 1379, 39 L.Ed.2d 577 (1974). An "insubstantial" federal question is one that is either "obviously without merit," or one that is clearly foreclosed by previous Supreme Court decisions. Those decisions must "leave no room for the inference that the questions sought to be raised can be the subject of controversy." *Id.* (quoting *Ex parte Poresky*, 290 U.S. 30, 32, 54 S.Ct. 3, 4, 78 L.Ed. 152 (1933)). Previous decisions that merely render claims doubtful or of questionable merit do not render them insubstantial for jurisdictional purposes. *Id.*

*Wyke v. Polk Cnty. Sch. Bd.*, 129 F.3d 560, 566 (11th Cir. 1997). Although one district court in this circuit has stated that "[a]n asserted federal claim is not substantial if it is frivolous," *Middleton v. Naqvi*, No. 5:07-CV-482-HL, 2008 WL 228039, at *2

14

(M.D. Ga. Jan. 25, 2008),  the citation relied upon for this proposition was *L.A. Draper & Son v. Wheelabrator-Frye, Inc.*, 735 F.2d 414, 427 (11th Cir. 1984), where the Eleventh Circuit stated that "[t]he question for jurisdictional purposes is not whether the claims are without merit but whether the prior decisions inescapably render the claims frivolous," *id.* (citing *Jackson v. Stinchcomb*, 635 F.2 462, 470 (5th Cir. 1981)) (internal quotation marks omitted).  The undersigned does not deem Plaintiff's FDCPA claim to be "frivolous" in the sense used by the Eleventh Circuit in *L.A. Draper & Son*, however.  Plaintiff's FDCPA claim is frivolous in the sense that it is lacking in merit, but it is not frivolous in the sense that the claim Plaintiff seeks to assert does not exist. In other words, while the undersigned ultimately concludes that Plaintiff's FDCPA claim is unavailing and should be dismissed, that does not mean that the *cause of action* itself is not "substantial."  The FDCPA's purpose is " 'to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.' " *Brown v. Budget Rent-A-Car Sys., Inc.*, 119 F.3d 922, 024 (11th Cir. 1997) (quoting 15 U.S.C. § 1692(e)).  Under certain circumstances, the FDCPA prohibits collection on a disputed debt until verification has been made, *see* 15 U.S.C. § 1692g,

15

and Plaintiff alleges that she has repeatedly requested verification but has not received a timely response, and "Defendants"[8] have continued to pursue the sale under power, [Doc. 1-1 at 14]. As the Bank Defendants note in their motion to dismiss, Plaintiff's FDCPA claim is ultimately unavailing because foreclosing on a security interest is not debt-collection activity for the purposes of § 1692g (as will be discussed further below), but the undersigned deems this a failure on the merits, not an indication that the Court lacks jurisdiction over the claim. This reasoning is supported by the Seventh Circuit's decision in *Rabe v. United Air Lines, Inc.*, 636 F.3d 866 (7th Cir. 2011), where the court held that the plaintiff's Title VII[9] and ADEA[10] claims based on work outside of the United States was "substantial enough to give the district court subject matter jurisdiction over the case, including supplemental jurisdiction over the state law claim," even though the claims were not successful on the merits because the statutes do not apply to work outside of the United States, *id.* at 869-70.[11] Cutting against this is the

---

[8]     Plaintiff does not indicate the specific defendant or defendants to which she refers.

[9]     Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*

[10]     Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*

[11]     The undersigned notes that the case may be distinguishable because the court noted that "[t]he Supreme Court has held that the closely related question whether

AO 72A
(Rev.8/8
2)

Eleventh Circuit's unpublished opinion in *Kinsey v. King*, 257 Fed. Appx. 136 (11th Cir. Sept. 24, 2007), where the court deemed "insubstantial and frivolous" the *pro se* plaintiffs' claim under the Sixth Amendment because that amendment applies only to criminal proceedings, as well as the claims under the First, Fifth, and Fourteenth Amendments because the plaintiffs had not alleged state action, *id.* at 138-39. The undersigned chooses not to follow this reasoning, however, because it contravenes the Eleventh Circuit's own statement—in a published opinion—that "[t]he question for jurisdictional purposes is not whether the claims are without merit but whether the prior decisions inescapably render the claims frivolous," *L.A. Draper & Son*, 735 F.2d at 427. The failure to plead state action should not deprive a federal court of jurisdiction in a First Amendment case (for example); rather, the complaint should simply be deemed insufficiently pleaded.[12] It cannot be the case that insufficient pleading is enough to deprive the Court of subject-matter jurisdiction; that would in

―――――――――――――

an employer has enough employees to be subject to Title VII is a matter for the merits rather than a requirement for subject matter jurisdiction." *Rabe*, 535 F.3d at 869 (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006)).

[12]     Although the *Kinsey* court did not discuss it, it was reasonably clear that there was no state action in that case because the suit was brought against private parties. Nevertheless, the *Kinsey* court addressed the purported jurisdictional problem as a pleading problem.

AO 72A
(Rev.8/8
2)

many instances render superfluous Rule 12(b)(6) of the Federal Rules of Civil Procedure (providing for dismissal for "failure to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6)), given that Rule 12(b)(1) already provides for dismissal for "lack of subject-matter jurisdiction," Fed. R. Civ. P. 12(b)(1).[13] For these reasons, the undersigned considers Plaintiff's claim "substantial" even if it is ultimately lacking in merit.[14]

Next, the undersigned concludes that this Court has supplemental jurisdiction over Plaintiff's state-law claims. Supplemental jurisdiction exists "over all other claims that are so related to claims" over which a court has original jurisdiction that "they form part of the same case or controversy." 28 U.S.C. § 1367(a). "In deciding whether a state law claim is part of the same case or controversy as a federal issue, [courts] look to whether the claims arise from the same facts, or involve similar occurrences, witnesses or evidence." *Hudson v. Delta Air Lines, Inc.*, 90 F.3d 451, 455 (11th Cir.

_____

[13]   It would also mean that almost all of the countless foreclosure-related cases resolved over the past several years by the numerous members of this Court were impermissibly resolved on the merits rather than dismissed for lack of jurisdiction.

[14]   Although the Bank Defendants contend that the "predatory lending" claim (Count III) is a federal cause of action based on regulations prohibiting predatory lending promulgated by the Office of the Comptroller of the Currency (a division of the U.S. Department of the Treasury), [Doc. 18 at 9-10], the complaint does not cite any such regulations, [*see* Doc. 1-1 ¶¶ 55-63].

AO 72A
(Rev.8/8
2)

1996); *see also Lucero v. Trosch*, 121 F.3d 591, 597 (11th Cir. 1997) (noting that the case or controversy standard "confers supplemental jurisdiction over all state claims which arise out of a common nucleus of operative fact with a substantial federal claim"). Here, Plaintiff's claims all concern at least the rights under the security deed specifically and the foreclosure proceedings generally. Indeed, each of Plaintiff's eight substantive counts rely on the same factual allegations. [*See* Doc. 1-1 ¶¶ 36, 45, 55, 64, 72, 78, 88, 102 ("Plaintiff restates and re-alleges the contents of paragraphs one (1) through thirty five (35), and all general and unnumbered paragraphs of this Complaint, as if fully restated herein.")]. As such, supplemental jurisdiction exists over these claims.

Further, the undersigned finds it appropriate to exercise supplemental jurisdiction in this particular case, even though the federal claim is due to be dismissed. A district court may decline to exercise supplemental jurisdiction over a claim if:

(1) the claim raises a novel or complex issue of state law;

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction;[15]

---

15    The Eleventh Circuit has noted that " '[a] federal court will find substantial predominance when it appears that a state claim constitutes the real body of a case, to which the federal claim is only an appendage.' " *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 744 (11th Cir. 2006) (quoting *McNerny v. Neb. Pub. Power Dist.*,

19

AO 72A
(Rev.8/8
2)

(3) the district court has dismissed all claims over which it has original jurisdiction; or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). In evaluating exceptional circumstances, courts are to consider factors of judicial economy, convenience, fairness to the parties, and whether all claims would be expected to be tried together." *Parker*, 468 F.3d at 745. Here, the undersigned concludes that for purposes of judicial economy and fairness, the Court should exercise supplemental jurisdiction over Plaintiff's claims. This case was removed to this Court more than six months ago and has been subject to substantial amounts of briefing. It would be a wasteful exercise to remand this case to state court for another lengthy round of briefing, particularly given the complaint's lack of merit. *See Sullivan v. Chappius*, 711 F. Supp. 2d 279, 286 (W.D.N.Y. 2010) ("In the case at bar, it would hardly promote the interests of fairness or judicial economy to leave the door open for plaintiff to refile his . . . claim in state court, and require defendants to litigate there, when that claim is so obviously lacking in merit."); *see also Mauro v. S. New Eng. Telecommc'ns., Inc.*, 208 F.3d 384, 388 (2d Cir. 2000) (upholding district court's decision to retain jurisdiction over state claims after sole federal claim had been

---

309 F. Supp. 2d 1109, 1117-18 (D. Neb. 2004)).

dismissed, where declining jurisdiction over state claims "would have furthered neither fairness nor judicial efficiency" and the state causes of action did not require district court "to resolve any novel or unsettled issues of state law"), *cited in Sullivan*, 711 F. Supp. 2d at 286; *Waterman v. Transp. Workers' Union Local 100*, 8 F. Supp. 2d 363, 369 n.2 (S.D.N.Y. 1998) ("One reason to retain jurisdiction is if the outcome of the claim is plain." (citing *Brazinski v. Amoco Petroleum Additives Co.,* 6 F.3d 1176, 1182 (7th Cir. 1993)).

The undersigned further rejects the remainder of Plaintiff's objections. First, regarding the jurisdiction argument under O.C.G.A. § 44-2-60, that statute states that "[f]or the purpose of enabling all persons owning real estate within this state to have the title thereto settled and registered as prescribed by this article, the superior court of the county in which the land is located shall have exclusive original jurisdiction *of all petitions and proceedings had thereupon*," O.C.G.A. § 44-2-60 (emphasis added). This provision and the surrounding provisions are part of the "Land Registration Law," *see* O.C.G.A. § 44-2-40; as they concern land registration, they do not appear relevant to this action. Also, a state statute cannot deprive a federal court of diversity jurisdiction by providing that a claim actionable under state law may be prosecuted only in a state court. *Hindes v. FDIC*, 137 F.3d 148, 168 n.15 (3d Cir. 1998) (holding that "a state

21

statute cannot be applied so as to limit a federal court's supplemental jurisdiction.");
*Poarch v. City of Gatlinburg*, 852 F.2d 1288 (6th Cir. 1988) (unpublished Table decision) (citing *Markham v. City of Newport News*, 292 F.2d 711 (4th Cir. 1961); C. Wright, A. Miller, & E. Cooper, *Fed. Prac. & Proc.* § 4211 (1988)); *Griffith v. Bank of New York*, 147 F.2d 899, 904 (2d Cir. 1945) ("[I]t is well settled that state statutes cannot limit the jurisdiction . . . of the federal courts."); *Connell v. Algonquin Gas Transmission Co.*, 174 F. Supp. 453, 456 (D.R.I. 1959) ("While [the state law] does provide that a petition for assessment of damages for a taking of land thereunder shall be brought in the superior court for the county where said land is located, it is clear that such a provision cannot deprive a federal court sitting in said county of jurisdiction to entertain such a petition if other federal jurisdictional requirements are met.") (citations omitted); *Gillman v. Inner City Broadcasting Corp.*, No. 08 Civ. 8909(LAP), 2009 WL 3003244, at *3 n.6 (S.D.N.Y. Sept. 18, 2009) ("A state statute cannot deprive a federal court of subject matter jurisdiction.").

As for Plaintiff's other objections, those are time-barred. The notice of removal was filed on October 3, 2011, and the motion to remand was filed on November 3, 2011—in other words, thirty-one days later, which is more than the thirty days allowed, *see* 28 U.S.C. § 1447(c) ("A motion to remand the case on the basis of any defect other

than lack of subject matter jurisdiction must be made within 30 days after the filing of

the notice of removal under section 1446(a).").[16] The Court therefore need not consider

those objections.[17]

---

[16] The three-day period frequently added under Rule 6(d) of the Federal Rules of Civil Procedure does not apply to motions to remand a notice of removal:

> As one circuit court has explained, however, Rule 6(d) "does not extend the thirty-day period of § 1447(c), as that rule applies only when a party is required to act within a prescribed period after service, not after filing." *See Pavone v. Mississippi Riverboat Amusement Corp.*, 52 F.3d 560, 566 (5th Cir. 1995) (emphasis in original); *see also*, *e.g.*, *Delew v. Las Vegas Metropolitan Police Dep't*, 108 F. Supp. 2d 1146, 1148 (D. Nev. 2000) (holding "three-day extension provided by Rule 6[d] does not apply [to motion to remand pursuant to § 1447(c) ] because the time limit is measured from 'filing', not from service of the notice"; denying motion to remand filed 31 days after notice of removal was filed).

*Borchers v. Standard Fire Ins. Co.*, No. C-10-1706 MMC, 2010 WL 2608291, at *1 (N.D. Cal. June 25, 2010).

[17] The undersigned nevertheless notes that it is entirely unclear what Plaintiff intends to argue with his discussion of RESPA and the McCarran-Ferguson Act. Further, "[t]he requirement that there be unanimity of consent in removal cases with multiple defendants does not require consent of defendants who have not been properly served." *Johnson v. Wellborn*, 418 Fed. Appx. 809, 815 (11th Cir. Mar. 17, 2011) (citing *Bailey v. Janssen Pharmaceutica, Inc.,* 536 F.3d 1202, 1208 (11th Cir. 2008)).

AO 72A
(Rev.8/8
2)

For these reasons, the undersigned **RECOMMENDS** that Plaintiff's motion to remand, [Doc. 11], be **DENIED**.[18]

## IV.    Motion to Dismiss Standard

A court will grant a Rule 12(b)(6) motion to dismiss if the complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  Under Rule 8 of the Federal Rules of Civil Procedure, a pleading states a claim when it contains, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  To determine whether a complaint fails to state a claim, the Court must apply the standard announced by the Supreme Court in *Bell Atl. v. Twombly*, 550 U.S. 555 (2007), recently described as follows:

> [T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.  A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause

---

[18]    The undersigned resolves this motion through recommendation because the Eleventh Circuit does not appear to have determined whether a motion to remand is a case-dispositive motion that must be resolved through a report and recommendation.  *Compare Williams v. Beemiller, Inc.*, 527 F.3d 259, 264-65 (2d Cir. 2008) (joining the Third, Sixth, and Tenth Circuits in concluding that such motions are dispositive) *with Franklin v. City of Homewood*, Civil Action No. 07-TMP-006-S, 2007 WL 1804411, at *2-3 (N.D. Ala. June 21, 2007) (noting the decisions of the Third, Sixth, and Tenth Circuits but examining the text of 28 U.S.C. § 636 and concluding that a motion to remand is non-dispositive).

AO 72A (Rev.8/8 2)

of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (alterations, citations, and internal quotation marks omitted).

## V.    The Bank Defendants' Motion to Dismiss

### A.    The Bank Defendants' Opening Brief

First, the Bank Defendants contend that the complaint should be dismissed because it is a shotgun pleading and because it fails to state a claim upon which relief can be granted. [Doc. 14 at 7-11].

Second, they argue that in the security deed Plaintiff acknowledges MERS's involvement as grantee and nominee of the lender, and that MERS could transfer and assign the security deed to others. [*Id.* at 14-15]. They further contend that while Plaintiff's mortgage might have been pooled into a securitized trust, "that fact has no 'real effect on Plaintiff's rights with respect to h[er] loan, and it certainly would not absolve Plaintiff from having to make payments on h[er] loan or somehow shield Plaintiff's property from foreclosure.' " [*Id.* at 16 (alterations added) (quoting *Merkerson v. Bank of Am. Corp.*, No. 1:10-cv-0050-WBH, Doc. 20 at 4 (N.D. Ga. Apr. 22, 2010) (Hunt, J.)].

Third, the Bank Defendants contend that BANA had authority to pursue foreclosure as the servicing agent, stating: (1) under Georgia law, a secured creditor may appoint an agent to enforce its rights under the note and the security deed, and BANA is the servicer of Plaintiff's loan; (2) the security deed is a contract that includes

the right to foreclose and sell the Property; and (3) Georgia courts have repeatedly rejected the "note-splitting" and "show-me-the-note" arguments. [Doc. 14 at 17-20].

Turning to Plaintiff's specific claims, the Banking Defendants state that Plaintiff's claim for injunctive relief (to enjoin the foreclosure) fails because the foreclosure has already occurred, because the claim is predicated on the unavailing note-splitting and show-me-the-note arguments, and because Plaintiff's complaint fails to state any valid claim on which relief can be granted. [*Id.* at 22-24]. They further contend that the claim for breach of the implied covenant of good faith and fair dealing fails because there is no such cause of action outside of a claim for breach of contract, which has not been alleged. [*Id.* at 24-26]. As for the predatory-lending claim, they suggest it fails because Plaintiff has cited no statute that would provide relief for such lending or facts supporting an allegation that she was a victim of such lending, if a predatory-lending cause of action even exists, which has not yet been determined in Georgia. [*Id.* at 26-27]. In addition, they argue that any GFHA claim is time-barred because of the two-year statute of limitations, which ran on February 28, 2008 (two years after the loan at issue was originated). [*Id.* at 27-28]. Regarding the quiet-title claim, the Bank Defendants contend that Plaintiff has failed to articulate any facts that would suggest impropriety with any alleged sale, assignment, or transfer document, and

AO 72A
(Rev.8/8
2)

thus Plaintiff's conclusory assertion that fee simple title vests in her alone fails to satisfy the pleading standard discussed in *Iqbal*. [*Id.* at 28-29]. According to the Bank Defendants, this same pleading problem plagues Plaintiff's claims for conversion and under O.C.G.A. § 44-14-162(b)[19], and the claims under O.C.G.A. §§ 16-8-4(a) and 16-8-2 fail because those are criminal statutes. [*Id.* at 30-31]. With respect to the FDCPA, they argue that this claim fails because Plaintiff has not pleaded any of the elements of the claim, foreclosing on a security interest is not in any event debt collection activity under the statute, and even if the FDCPA did apply, Plaintiff has failed to allege sufficient facts to show a violation of § 1692g because Plaintiff has not alleged that she disputed the debt or to whom she made the purported requests for information, and she has not identified any written request made concerning the debt. [*Id.* at 31-34]. Finally, the Bank Defendants contend that any fraud claim fails because Plaintiff has failed to state a single element of fraud with the particularity required, given that the complaint fails to identify a single false statement made by any of the Bank Defendants, much less the time, place, and contents of the statement, and how the

---

[19]    "The security instrument or assignment thereof vesting the secured creditor with title to the security instrument shall be filed prior to the time of sale in the office of the clerk of the superior court of the county in which the real property is located." O.C.G.A. § 44-14-162(b).

AO 72A
(Rev.8/8
2)

statement misled and was relied upon by Plaintiff and benefitted the Bank Defendants. [*Id.* at 34-36].

## B. Plaintiff's Response

In response, Plaintiff first states that she requests not only that the Court deny the motion to dismiss but that the Court

> either have criminal charges levied against those who have falsified documents in Public Records, or allow Plaintiff and her counsel to go before the Federal Grand Jury with their evidence of criminal activities, so that Georgia homeowners will no longer be foreclosed upon by entities using criminal activities in their unlawful attempts to enforce an alleged contract they have no interest in.

[Doc. 20 at 1-2]. Plaintiff then utilizes several pages to discuss "type-o's" and other idiosyncrasies in the assignment; the "numerous, current federal investigations and lawsuits against Bank of America, Countrywide, and The Bank of New York Mellon"; and various other lawsuits, "reports," and additional matters. [*Id.* at 2-14]. She broadly contends that this action is about Defendants' standing to foreclose and to exercise the sale under power, and that "[w]hether or not Plaintiff made her payments is not really the issue." [*Id.* at 14]. She then argues that her complaint is not a shotgun pleading because it was written before a state court, which has "significantly different, and significantly less restrictive" pleading standards. [*Id.* at 15].

AO 72A
(Rev.8/8
2)

Turning to substantive arguments, Plaintiff first states that it is impossible that her loan was part of the BONYM trust because the closing date for the trust was March 29, 2006, and substitutions were only permitted within two years of that date; thus, according to Plaintiff, the purported assignment was ineffective. [*Id.* at 16-17]. She next contends that the assignment is the equivalent of a forged deed, and she complains that Defendants have raised the note-splitting and show-me-the-note arguments to "attempt[] to get the case quickly dismissed, before they are put into a position of having to produce credible evidence to validate a debt acceptable under the Rules of evidence"; Plaintiff states that "It doesn't take much common sense to know, that the 'splitting of the note' and 'produce the note' . . . claims immediately fail in federal courts." [*Id.* at 17-19]. Third, Plaintiff cites the best-evidence rule in stating that Defendant must produce the best evidence in support of their defense, yet Defendants are ignoring the real issues, making ludicrous statements instead of demonstrating that they have standing. [*Id.* at 20-23]. Fourth, Plaintiff states—under the heading "Breaches of Contract, Good Faith and Fair Dealing and Duty Owed"—that she was owed both a fiduciary duty and a statutory duty. [*Id.* at 23-25]. Fifth, with respect to predatory-lending and fair-housing claims, Plaintiff states that she has "already outlined arguments regarding predatory lending and other specific claims that

30

allege improper lending procedures," and she reiterates and incorporates those arguments. [*Id.* at 25-26]. Sixth, Plaintiff contends that BANA and BONYM have not established their status as a secured creditor, and thus they were not holders in due course and had no standing to conduct a non-judicial foreclosure. [*Id.* at 26-28]. She notes that "Defendants'"[20] conduct is likely to have violated O.C.G.A. §§ 44-2-43 and 9-11-17. [Doc. 20 at 28-29]. Seventh, Plaintiff alleges that a mortgage servicer qualifies as a debt collector under § 1692f(6) of the FDCPA, and because she was denied validation of the loan and "the amounts claimed" in various foreclosure documents "varied sufficiently to have given rise to immediate questions of what was actually owed," she has stated a claim under § 1692g(b). [Doc. 20 at 29-30]. Finally, Plaintiff contends that her complaint "shows fraud and intent to defraud plead throughout the entire complaint. Plaintiff further alleged that defendants [sic] act of removing this case to this Court, was yet another act of fraud." [*Id.* at 30].

## C. The Bank Defendants' Reply

In reply, the Bank Defendants first argue that Plaintiff lacks standing to challenge the assignment of the security deed because she was not a party to the assignment

---

[20] Plaintiff does not indicate the specific defendant or defendants to which she refers.

31

AO 72A
(Rev.8/8
2)

contract. [Doc. 22 at 2-3].[21] They make the same argument with respect to Plaintiff's

challenge of the entry of her loan into the BONYM trust, [*id.* at 4-5], and they point to

the law of other circuits reaching similar conclusions, [*id.* at 5-6].

Second, they argue that the assignment from MERS (as the nominee of the

lender, CWABS) to BONYM was in any event valid, BONYM had standing foreclose

because it held the security instrument, and BANA, as the servicing agent, was entitled

to initiate foreclosure proceedings on behalf of the holder of the security instrument.

[*Id.* at 6-11].

Third, they contend that Plaintiff has provided no basis for her claim for

"contractual breach of good faith and dealing," [*id.* at 11-12], or her FDCPA claim,

even considering that Plaintiff apparently seeks to assert a violation of § 1692f(6),

[*id.* at 13].

Fourth, they observe that Plaintiff has not stated any new arguments to support

any of her remaining claims, and that several allegations were presented for the first

time in Plaintiff's response and therefore are not validly before the Court on a motion

to test the sufficiency of the allegations in the complaint. [*Id.* at 14].

_____

[21] The page numbers cited for the Bank Defendants' reply refer to the actual page numbers on the document, not to the header page numbers added to the PDF file on the electronic docket.

AO 72A
(Rev.8/8
2)

Finally, they state that Plaintiff failed to oppose the motion to dismiss with respect to the claims for injunctive relief, quiet title, and conversion, and the claims under O.C.G.A. §§ 16-8-2, 16-8-4(a), and 44-14-162(b), and thus Plaintiff has waived her opposition to those claims, which should therefore be dismissed. [*Id.* at 15].

**D.      Discussion**

**1.      Claims Argued by the Bank Defendants to be Abandoned (Counts I, V, VI, VII)**

As the Bank Defendants note, Plaintiff failed to oppose to the Bank Defendants' motion to dismiss with respect to the claims for injunctive relief (Count I), quiet title (Count V), and conversion (Count VII), and the claims under O.C.G.A. §§ 16-8-2 (Count VII), 16-8-4(a) (Count VII), and 44-14-162(b) (Count VI).[22] The undersigned therefore **RECOMMENDS** that the claims for injunctive relief, quiet title, and conversion, and the claims under O.C.G.A. §§ 16-8-2, 16-8-4(a), and 44-14-162(b), be **DISMISSED AS ABANDONED**. *Fils v. City of Atlanta*, 647 F.3d 1272, 1295 (11th Cir. 2011) (failure to respond to argument constitutes abandonment of claim); *Otu v. Papa John's USA, Inc.*, 400 F. Supp. 2d 1315, 1328 (N.D. Ga. 2005) (Thrash, J.)

---

[22]      Count VII alleges several statutory violations. [*See* Doc. 1-1 at 10-11].

33

AO 72A
(Rev.8/8
2)

(holding that "[p]laintiff's failure to respond to [the] legal arguments relating to a claim . . . constitutes abandonment of the claim").

### 2. "Contractual Breach of Good Faith and Fair Dealing" (Count II)

In Georgia, there is no independent cause of action for breach of the covenant of good faith and fair dealing separate from a claim for breach of contract. *Cheryl Stone Trust ex rel. Stone v. BAC Home Loans Servicing, LP*, Civil Action No. 1:11-cv-0494-RWS, 2011 WL 2214672, at *2 (N.D. Ga. June 7, 2011) (Story, J.); *see also Denim N. Am. Holdings, LLC v. Swift Textiles, LLC*, No. 4:10-cv-45 (CDL), 2011 WL 318127, at *9 (M.D. Ga. Jan. 28, 2011) ("[I]t is well-settled [in Georgia] that the implied duty of good faith does not stand independent of the terms of the underlying contract.") (alterations in original; internal quotation marks omitted); *Stuart Enters. Int'l, Inc. v. Peykan, Inc.*, 252 Ga. App. 231, 234, 555 S.E.2d 881, 884 (2001) ("[T]he covenant [of good faith and fair dealing] is not independent of the contract.") (alterations added).

Here, rather than addressing the Bank Defendants' argument that a breach-of-contract claim is required to allege a breach of the covenant of good faith and fair dealing, Plaintiff simply ignored the arguments and discussed other, irrelevant

34

matters.[23]  Because Plaintiff did not allege a breach-of-contract claim, the undersigned **RECOMMENDS** that Plaintiff's claim for breach of the covenant of good faith and fair dealing (Count II) be **DISMISSED**.

### 3.    "Predatory Lending" (Count III)

It is not apparent to the undersigned that a cause of action for "predatory lending" exists, and Plaintiff has pointed to no legal authority to support such a claim. *See Sampson v. Wash. Mut. Bank*, 453 Fed. Appx. 863, 868 (11th Cir. Oct. 5, 2011) ("Sampson's claim of 'predatory lending' was alleged without reference to any state or federal cause of action, and he points to no legal authority creating a 'predatory lending' cause of action in his brief to this Court.  The district court did not err in dismissing that claim."); *see also Hill v. Saxon Mortg. Servs., Inc.*, Civil Action No. 1:09-CV-1078-RLV, 2009 WL 2386057, at *1 (N.D. Ga. May 14, 2009) ("The only cause of action asserted by the plaintiff is that of 'predatory lending.'  The plaintiff has failed to cite a statute, whether state or federal, that would provide her relief from

---

[23]      Even had Plaintiff asserted a breach-of-contract claim, she likely could not establish the elements of such a claim because she cannot demonstrate damages from any breach, given that she apparently did not make the required payments on her mortgage loan.

35

AO 72A
(Rev.8/8
2)

such lending.").  The undersigned therefore **RECOMMENDS** that Plaintiff's claim for predatory lending be **DISMISSED**.

### 4.     Georgia Fair Housing Act (Count IV)

A civil action under the GFHA must be commenced "not later than two years after the occurrence or the termination of an alleged discriminatory housing practice or the breach of a conciliation agreement entered into." O.C.G.A. § 8-3-217(a)(1).  Rather than respond to the Bank Defendants' argument that Plaintiff's GFHA argument is time barred, [Doc. 14 at 27-28], Plaintiff has ignored the argument, choosing instead to discuss a purported cease-and-desist order, [*see* Doc. 20 at 25-26].  While Plaintiff has thus not abandoned the GFHA claim in the traditional sense, the undersigned concludes that simply including the words "Fair Housing Claims" in the heading of the response and appending contextually nonsensical and unexplained statements below that heading is insufficient to constitute a proper response to that issue.  *Cf., e.g., Transamerica Leasing, Inc. v. Inst. of London Underwriters,* 430 F.3d 1326, 1331 n. 4 (11th Cir. 2005) ("[A] passing reference to an issue in a brief [is] insufficient to properly raise that issue."); *cf. also* N.D. Ga. R. 7.1B ("Failure to file a response shall indicate that there is no opposition to the motion.").  The Court cannot make arguments for a *pro se* party, *see Ware v. United States*, 154 F.R.D. 291, 293 (M.D. Fla. 1994), and it certainly will

36

not do so for a represented party like Plaintiff. For these reasons, the undersigned concludes that Plaintiff's GFHA claim has been abandoned. The undersigned therefore **RECOMMENDS** that Plaintiff's GFHA claim be **DISMISSED AS ABANDONED**.

### 5.  FDCPA (Count VIII)

In order to prevail on an FDCPA claim, a plaintiff must establish that:

(1) [she][has] been the object of collection activity arising from a consumer debt; (2) the defendant attempting to collect the debt qualifies as a "debt collector" under the Act; and (3) the defendant has engaged in a prohibited act or has failed to perform a requirement imposed by the FDCPA.

*Buckley v. Bayrock Mortg. Corp.*, Civ. No. 1:09-cv-1387-TWT, 2010 WL 476673, at *6 (N.D. Ga. Feb. 5, 2010) (Thrash, J., adopting Vineyard, M.J.) (second alteration in original) (quoting *Beadle v. Haughey*, No. Civ. 04-272-SM, 2005 WL 300060, at *3 (D.N.H. Feb. 9, 2005), and *Russey v. Rankin*, 911 F. Supp. 1449, 1453 (D.N.M. 1995)); *accord McCorriston v. L.W.T., Inc.*, 536 F. Supp. 2d 1268, 1273 (M.D. Fla. 2008). Under 15 U.S.C. § 1692g, as explained by the Eleventh Circuit, "if a consumer notifies a debt collector in writing that a debt is disputed, the collector must cease collection of that debt until the debt collector verifies the debt and mails a copy of the verification to the consumer." *Warren v. Countrywide Home Loans, Inc.*, 342 Fed. Appx. 458, 460 (11th Cir. Aug. 14, 2009) (citing 15 U.S.C. § 1692g(b)). The Eleventh Circuit has

AO 72A
(Rev.8/8
2)

determined, however, that foreclosing on a home is not debt collection under § 1692g and has agreed that "an enforcer of a security interest, such as a [mortgage company] foreclosing on mortgages of real property . . . falls outside the ambit of the FDCPA except for the provisions of section 1692f(6)." *Id.* at 460-61 (quoting *Chomilo v. Shapiro, Nordmeyer & Zielke, LLP*, No. 06-3101, 2007 WL 2695795, at *3-4 (D. Minn. Sept. 12, 2007)). Thus, enforcement of a security interest through the foreclosure process does not violate the FDCPA unless § 1692f(6) applies. *Warren, id.*[24]

Here, a claim under § 1692f(6) does not appear in the complaint. Because Plaintiff's complaint alleges a violation of § 1692g but not § 1692f(6), the FDCPA claim fails. For this reason, the undersigned **RECOMMENDS** that Plaintiff's FDCPA claim be **DISMISSED**.

---

[24] Section 1692f(6) prohibits a debt collector from "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if" (1) "there is no present right to possession of the property claimed as collateral through an enforceable security interest"; (2) "there is no present intention to take possession of the property"; or (3) "the property is exempt by law from such dispossession or disablement." 15 U.S.C. § 1692f(6). For purposes of § 1692f(6), a debt collector includes a person in the business of enforcing security interests. *See* 15 U.S.C. § 1692a(6).

AO 72A
(Rev.8/8
2)

### 6. Fraud

Plaintiff's complaint does not appear to formally allege a fraud claim, but permutations of the word appear throughout the complaint and are addressed in the Bank Defendants' motion to dismiss and the response and reply to that motion. Thus, although the undersigned does not read the complaint to allege a fraud claim, any potential fraud claim is addressed nonetheless.

To establish a fraud claim under Georgia law, a plaintiff must prove five elements: "false representation; scienter; intent to induce the plaintiff to act or refrain from acting; justifiable reliance; and damage proximately caused by the representation." *JarAllah v. Schoen*, 243 Ga. App. 402, 403-04, 531 S.E.2d 778, 780 (2000). Rule 9(b) of the Federal Rules of Civil Procedure requires that when fraud is alleged, "a party must state with particularity the circumstances constituting fraud," Fed. R. Civ. P. 9(b), and therefore claims of fraud are an exception to the notice-pleading requirements that generally apply to federal civil claims. The Eleventh Circuit has noted that "[p]articularity means that 'a plaintiff must plead facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendant['s] allegedly fraudulent acts, when they occurred, and who engaged in them.' " *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1357 (11th Cir. 2006) (alteration in original)

(internal quotation marks omitted) (quoting *United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1310 (11th Cir. 2002)); *see also Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005).

Here, Plaintiff has not satisfied these elements. It does not appear that Plaintiff has alleged any false representation at all, much less the speaker, the time of the statement, how any reliance on the statement was justifiable, or how Plaintiff suffered damages as a result of the statement. In her response to the Bank Defendants' motion to dismiss—which noted these flaws, [Doc. 14 at 34-36]—Plaintiff simply asserts that "Plaintiff's complaint shows fraud and intent to defraud plead throughout the entire complaint. Plaintiff further alleged that defendants act of removing this case to this Court, was yet another act of fraud," [Doc. 20 at 30]. Even putting aside the fact that this statement flippantly alleges an additional claim for fraud not found in the complaint—and which is entirely unsupported—this extremely cursory response by Plaintiff demonstrates either utter unwillingness to prosecute the case or a complete lack of support for her claims. In either case, dismissal is appropriate. The undersigned therefore **RECOMMENDS** that any fraud claim be **DISMISSED**.

AO 72A
(Rev.8/8
2)

## VI.    Conclusion

For the reasons above, the undersigned **RECOMMENDS** that the motion to remand be **DENIED**, [Doc. 11], that the first motion to dismiss be **GRANTED**, [Doc. 2], that the second motion to dismiss be **GRANTED IN PART**, **GRANTED AS UNOPPOSED IN PART**, and **DENIED AS MOOT IN PART**, [Doc. 14], that certain claims be **DISMISSED AS ABANDONED**, and that the complaint be **DISMISSED**.[25]

---

[25]    The Court would be remiss if it did not comment on Plaintiff's filings in this case. The Court is regularly confronted with cases in which plaintiffs are seeking to stop foreclosure proceedings. In most of these cases, the plaintiffs appear *pro se*. Their complaints frequently lack the sophistication associated with pleadings filed by counsel, and their claims often are pleaded in conclusory terms and are contrary to settled Georgia and federal law. Nonetheless, these pleadings are reviewed under the liberal construction standard applicable to *pro se* litigants' filings. *Erikson v. Pardus*, 551 U.S. 89, 94 (2007)

In this case, Plaintiff's complaint and subsequent filings, while much more sophisticated than *pro se* foreclosure-case pleadings in this Court, nevertheless suffer from many of the same deficiencies as those of non-represented plaintiffs. For instance, as noted just above, Plaintiff's response regarding the Bank Defendants' arguments concerning a fraud claim consists entirely as follows: "Plaintiff's complaint shows fraud and intent to defraud plead throughout the entire complaint," plus a bare allegation that the act of removing the case was also fraudulent. [Doc. 20 at 30]. Plaintiff made no attempt at all to address the Bank Defendants' contentions.

A second example of a marked deficiency is found in Plaintiff's breathtaking arguments regarding the FDCPA claim, which Plaintiff impliedly contends did not provide this Court with jurisdiction because it was not a "substantial" claim. [Doc. 11-1 at 8-9]. Cleverly, Plaintiff does not actually argue that the claim is without merit, but instead merely suggests that "[i]n almost every foreclosure case that is

AO 72A
(Rev.8/8
2)

removed to federal court," the *federal court* – as opposed to the state court in which the case was originally brought – dismisses the claim because it is either improperly pleaded or because "relief for such, according to federal court, cannot be granted." [*See id.*]. In other words, the problem is not with the claim itself but with the *federal courts'* handling of the claim—it is not that the claim is without merit or that Plaintiff has failed to plead it properly, but rather that federal courts simply tend to summarily dismiss the claims without seriously examining their merit. Plaintiff all but concedes that her claim lacks merit, and indeed in the response to the motion to dismiss, she utterly fails to respond to the Bank Defendants' contentions regarding the § 1692g claim.

A third notable problem with Plaintiff's complaint is that it persists with the show-me-the-note arguments that are regularly rejected by this Court. *See, e.g., Lefont v. Suntrust Mortg., Inc.*, No. 2:10-CV-36, 2011 U.S. Dist. LEXIS 15772, at *27 (N.D. Ga. Jan. 26, 2011) (Cole, M.J.) (finding that plaintiffs' "show me the note" argument is meritless and should be dismissed), *adopted by* 2011 U.S. Dist. LEXIS 15766 (N.D. Ga. Feb. 16, 2011) (Story, J.); *Malally v. BAC Home Loan Servicing, LLC*, No. 3:10-CV-0074, 2010 U.S. Dist. LEXIS 136555, at *33 (N.D. Ga. Oct. 6, 2010) (King, M.J.) ("Plaintiff does not cite to any federal statute or regulation that establishes the failure to present the 'note' constitutes a violation of that statute or regulation."), *adopted by* 2010 U.S. Dist. LEXIS 131485 (N.D. Ga. Dec. 13, 2010) (Hunt, J.); and *Watkins v. Beneficial, HSBC Mortg.*, No. 1:10-CV-1999, 2010 U.S. Dist. LEXIS 112857, at *15 (N.D. Ga. Sept. 1, 2010) (Vineyard, M.J.) ("In fact nothing in Georgia law requires a lender commencing foreclosure proceedings to produce the original note"), *adopted by* 2010 U.S. Dist. LEXIS 112848 (N.D. Ga. Oct. 21, 2010) (Thrash, J.). Remarkably, Plaintiff herself argues that "[i]t doesn't take much common sense to know, that the 'splitting of the note' and 'produce the note' claims immediately fail in federal courts." [Doc. 20 at 19 (citation omitted)]. Although Plaintiff of course filed this action in state court, not federal court, this Court's rejection of the show-me-the-note arguments is premised not on federal law but on state law. Judges of this Court frequently cite each other's decisions, but that does not mean that there is a federal common law of Georgia foreclosure proceedings; rather, each of these decisions is necessarily premised on Georgia law. Thus, to the extent that "common sense" suggests that the show-me-the-note arguments fail in federal court, it is because

42

The Clerk is **DIRECTED** to terminate the referral to the undersigned.

**IT IS SO ORDERED, RECOMMENDED, and DIRECTED**, this the 1st day of May, 2012.

_____
**ALAN J. BAVERMAN**
**UNITED STATES MAGISTRATE JUDGE**

_____

common sense suggests that Georgia state law squarely forecloses such arguments. In other words, all that Plaintiff need to have done to prevent the undersigned's "common sense" recommendation to the District Judge to reject her claims would be to cite Georgia law for the proposition that those arguments may appropriately be used to stop foreclosure proceedings (or provide some other form of relief). Rather than note such a case or statute and try to distinguish them, Plaintiff simply makes derisive arguments unworthy of a member of the Bar.

For each of these reasons, Plaintiff's complaint and subsequent filings are not pleadings appropriately submitted by officers of the Court, of which Plaintiff's counsel is one. Zealous representation is part of a lawyer's duty, but not at the expense of making arguments in good faith. *Cf.* Model Rules of Prof'l Conduct R. 3.1 ("A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law."). Many of Plaintiff's arguments do not appear to be made in good faith, given that Plaintiff persisted in prosecuting seemingly baseless claims without bothering to offer anything more than a *pro forma* response to keep them alive, if that, thus leading to a conclusion that the claims were interposed solely for purposes of delay. Even were this Court's docket not already overburdened, Plaintiff's filings are properly deemed a waste of this Court's limited judicial resources, a substantial portion of which was required to produce this Report and Recommendation recommending dismissal. Similar filings in the future may result in a recommendation that sanctions be imposed.

43

AO 72A
(Rev.8/8
2)